# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ROCHON,<br><br>    vs.          Plaintiff,<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                              Defendant. | CASE NO. 09-CV-373 H (POR)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** |

## I. BACKGROUND

On December 14, 2005, Charles Rochon ("Plaintiff") filed an application for disability insurance benefits pursuant to the Social Security Act. (Administrative Record ("AR") 91-95.) After the Commissioner denied his application both initially and on reconsideration, Plaintiff requested a hearing and on August 31, 2007 appeared with counsel and testified before an administrative law judge ("ALJ"). (AR 24-58.) On December 28, 2007, the ALJ rendered a decision finding that Plaintiff was not disabled within the meaning of the Act. (AR 5-20.) Specifically, the ALJ held that Plaintiff's substance use disorder was a contributing factor material to the determination of disability before January 10, 2006. (AR 20.) The ALJ held that after January 10, 2006, the time Plaintiff apparently stopped substance use, there are jobs in the national economy that Plaintiff could perform considering his age, education, work experience, and residual functional capacity ("RFC"). (AR 19-20.) The ALJ's decision

1  became the final decision of the Commissioner when the Appeals Council denied Plaintiff's
2  request for review. (AR 1-4.)

3  On February 25, 2009, Plaintiff filed a complaint pursuant to 42 U.S.C. § 405(g) of the
4  Social Security Act requesting judicial review of the final decision of the Commissioner of the
5  Social Security Administration ("Commissioner" or "Defendant") that denied Plaintiff a
6  period of disability and Disability Insurance Benefits ("DIB"). (Doc. No. 1.) On August 4,
7  2009, Plaintiff filed a motion for summary judgment. (Doc. No. 17.) On August 26, 2009,
8  Defendant filed a cross-motion for summary judgment and a response in opposition to
9  Plaintiff's motion for summary judgment. (Doc. No. 19.) On August 31, 2009, Plaintiff filed
10 a reply to Defendant's opposition. (Doc. No. 20.)

11 For the following reasons, the Court denies Plaintiff's motion for summary judgment
12 and grants Defendant's cross-motion for summary judgment.

## II. STANDARD OF REVIEW

14 Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial
15 review of a final agency decision. 42 U.S.C. § 405(g). Upon review, the Commissioner's
16 decision must be affirmed if it was supported by substantial evidence and based on proper legal
17 standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence is
18 "more than a mere scintilla" but less than a preponderance, and is such "relevant evidence as
19 a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales,
20 402 U.S. 389, 401 (1971); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). A finding
21 of substantial evidence is determined from the record as a whole. Desrosiers v. Sec'y of
22 Health and Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

# III. DISCUSSION

## A. The ALJ Provided Specific, Clear and Convincing Reasons for Discounting Plaintiff's Credibility

The ALJ gave clear and convincing reasons for discounting Plaintiff's credibility and properly assessed Plaintiff's RFC because the ALJ considered medical opinion evidence, Plaintiff's daily activities, the lack of aggressive pain management, and the ALJ's own observations.

In order to find Plaintiff's testimony regarding the severity of his pain and impairments unreliable, the ALJ was required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). If the claimant meets this threshold and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. at 1281, 1283-84. The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id. at 1284; see Orn v. Astrue, 495 F.3d 625, 637-39 (9th Cir. 2007). If the ALJ's credibility finding is supported by substantial evidence, the court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

The ALJ applied the correct standard in determining the credibility of the Plaintiff. The ALJ found that "the medical determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity,

1  persistence, and limiting effects of these symptoms are not entirely credible." (AR at 19.)
2  The ALJ then explained the basis of this negative credibility assessment.

3  The ALJ considered Plaintiff's daily activities and found that the activities did not
4  indicate a disabling level of impairment (AR at 18.)  Plaintiff argues that a claimant's daily
5  activities must be transferable to the work setting and must be carried out for a substantial part
6  of the day to discredit a claimant's statements. (Doc. No. 17 at 9-10.)  However, in Vertigan
7  v. Halter, the court held "if a claimant is able to spend a substantial part of [her] day engaged
8  in pursuits involving the performance of physical functions that are transferable to a work
9  setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."
10 Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).  In Vertigan, the ALJ did not
11 improperly consider the daily activities, but rather the record did not provide substantial
12 evidence to support a finding that the claimant lacked credibility. Id.  A claimant's daily
13 activities may indicate that a claimant cannot return to work, but still may be relevant if the
14 activities indicate the severity of a claimant's limitations was exaggerated. See Valentine v.
15 Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009).

16 The record indicates that Plaintiff spent his days paying bills, visiting family, interacting
17 with his AA group members, doing laundry, performing some household repairs and other light
18 chores, driving, shopping either in person or on the computer, attending auctions, reading and
19 watching television. (AR 40-41, 150, 152-54.)  Plaintiff also reported that he could walk "a
20 couple of miles" before needing to rest, and usually got along well with others. (AR 155-56.)
21 These activities suggested a higher level of functioning than what Plaintiff alleged. See, e.g.,
22 Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ properly discredited
23 claimant's testimony when he determined that "claimant has normal activities of daily living,
24 including cooking, house cleaning, doing laundry, and helping her husband in managing the
25 finances."); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (ability to perform
26 various household chores such as cooking, laundry, washing dishes, and shopping suggested
27 ability to perform a range of light work); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)
28 (claimant's pain complaints were not credible because he could perform routine household

maintenance and shopping, chores, ride public transportation, and drive).  The Court concludes that the ALJ properly considered the Plaintiff's daily activities in determining Plaintiff's credibility.  Substantial evidence supports the ALJ's credibility finding because the ALJ did not solely rely on Plaintiff's daily activities in reaching his finding.

Citing Plaintiff's medical history records (AR Exhibit 1F), the ALJ also discounted Plaintiff's testimony based on lack of aggressive pain management. (AR 18.)  Conservative treatment is a valid basis for discounting credibility.  See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("The ALJ also noted that [claimant's] physical ailments were treated with an over-the-counter pain medication.  We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment.") (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).  Plaintiff contends that his history of drug abuse prevented him from taking narcotic medication.  (Doc. No. 17 at 10.)   Plaintiff testified that he took only over-the-counter ibuprofen medication for his pain. (AR 35.)  During the hearing, the ALJ pointed out his doctors could have given him prescription strength Motrin for his pain and asked Plaintiff why didn't he get that.  (AR 35.)  Plaintiff responded, "Every time I've gone to my primary care, she's said ibuprofen, so I've just been handling it myself."  (AR 36.)  Although Plaintiff testified that he was taking 2,500 milligrams of ibuprofen a day with 12 to 13 pills (AR 35), Plaintiff's decision to handle his pain management treatment himself with over the counter medication and Plaintiff's medical history records (Exhibit 1F) indicate evidence of conservative treatment.

The ALJ properly considered his own observations of Plaintiff when assessing credibility. (AR 18.)  The ALJ can use personal observations when evaluating credibility.  See Thomas, 278 F.3d at 960; Social Security Ruling ("SSR") 96-7P ("[T]he adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements.").  Here, the ALJ noted that Plaintiff was able to participate in the hearing and respond to questioning without any apparent mental difficulty.  (AR 18.)  The ALJ's credibility finding was not solely based on his personal observations, but it was properly

part of his overall assessment of the credibility of the Plaintiff's statements.

The ALJ also properly relied on medical opinion evidence in assessing the Plaintiff's credibility. Batson v.Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (holding that ALJ properly relied on physician's opinion to discredit claimant's testimony regarding functional limitations). Dr. Ross opined that Plaintiff could perform a range of medium work, an opinion that the ALJ adopted into the hypothetical questions to the vocational expert as representative of Plaintiff's residual functional capacity. (AR 52-53.) The ALJ also relied on Dr. Close's clinical findings showing Plaintiff could function within the RFC for a range of medium work. (AR 320-22.)

The record contains substantial evidence supporting the ALJ's credibility findings. The Court concludes that the ALJ did not arbitrarily render an adverse credibility finding because the ALJ stated sufficiently specific reasons for his credibility determination. Therefore, the Court concludes the ALJ committed no error in evaluating Plaintiff's credibility.

**B. The ALJ Properly Considered Dr. Ross' Assessed Limitations of Plaintiff**

Contrary to Plaintiff's argument, the ALJ fully accounted for the assessment by State Agency physician Dr. Ross regarding Plaintiff's "manipulative limitations" and "preclusion for reaching overhead" because the ALJ gave weight to Dr. Ross' assessment that Plaintiff could perform a range of medium work. (AR 18) (citing Exhibit 4F). The ALJ also specifically adopted the doctor's limitations in the hypothetical questions posed to the vocational expert, who then identified a significant number of jobs that Plaintiff could perform despite the limitations. (See AR 52-55.) Therefore, the ALJ committed no error as to the ALJ's consideration of Dr. Ross' assessment of Plaintiff.

**C. The Commissioner Properly Considered the Veteran Affairs Disability Rating**

Plaintiff contends that the ALJ improperly ignored a 70 percent disability rating (paid at the 100 percent rate) that the Department of Veteran Affairs ("VA") assessed in December 2004. (AR 179-80.) Plaintiff presented this evidence for the first time to the Appeals Council after the ALJ's decision. (AR 177.) The most recent Rating Decision from the VA in the record appears to be from October 26, 2005. (AR 716.) The court concludes that the ALJ's

decision is consistent with the VA disability rating evidence and the Appeals Council properly considered this evidence.

The ALJ's decision is consistent with the VA disability rating. The ALJ found that when Plaintiff's substance abuse was taken into account, Plaintiff was disabled because he could not return to his past relevant work and there was no work he could perform in the national economy. (AR 15-16.) However, a claimant is ineligible for disability benefits if his drug addiction or alcoholism is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(c)). As the ALJ noted, the VA records showed that Plaintiff abused alcohol, cocaine, heroine, marijuana and methamphetamine drugs for numerous years, and became completely abstinent sometime in January 2006. (See AR 13-14, 28, 195, 235-36, 239, 246, 247, 252.) Before January 2006, Plaintiff reported that his longest period of sobriety was for six months sometime in 2003. (AR 272.) The ALJ's decision is consistent with the VA disability rating because the VA rating similarly took into consideration Plaintiff's history of poly-substance abuse. (AR 179-80.)

In a social security disability case, "an ALJ must ordinarily give great weight to a VA determination of disability." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). Although the VA and Social Security disability programs are similar, they are not identical. See id. For instance, while the VA assesses percentages of disability based on poly-substance abuse, the Commissioner does not. Here, the ALJ properly applied the Social Security disability program and assessed Plaintiff's remaining limitations if he stopped his substance abuse. (AR 16-20.) Because the VA did not do so, there was no relevant rating for the ALJ to specifically accept or reject once Plaintiff became abstinent in January 2006. Additionally, the record indicates that the Commissioner considered this evidence along with Plaintiff's other new evidence in denying Plaintiff's appeal of the ALJ's decision. (AR 1-4.) Therefore, the Court finds Defendant committed no error with regards to the VA disability rating evidence.

/ / /

/ / /

**D. The Commissioner Properly Considered Dr. Gershwin's Opinion Rendered After the ALJ's Decision**

Plaintiff contends that the ALJ should have assessed more mental restrictions based on Dr. Gershwin's opinion. Like the evidence of the VA disability rating, the evaluation of Dr. Gershwin was submitted to the Appeals Council for the first time, after the ALJ's decision. The ALJ denied Plaintiff's claim on December 28, 2007. (AR 20.) Dr. Gershwin issued his opinion on March 14, 2008. (AR 184-87.) Dr. Gershwin's opinion may be "less persuasive since it was obtained by Appellant only after the ALJ issued an adverse determination." Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989) (citing Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985) (refusing to remand for reconsideration of "new" evidence because when the claimant "failed to succeed on his disability claim in the agency and district court hearings, he sought out a new expert witness who might better support his position"); see also Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (noting that "because Dr. Hanbery's 1993 reports were issued after the Commissioner's decision . . . they are less than persuasive."). Moreover, the record contains substantial evidence the Appeals Council considered all of the evidence, including the post-decision supplemental records submitted by Plaintiff, in denying his request for review. (AR 1-4.) In its written decision, the Appeals Council specifically stated it had considered Plaintiff's additional evidence and found it did not warrant changing the ALJ's disability decision. (Id.) Therefore, the Court concludes that Defendant did not commit any error with regard to medical opinion evidence.

**E. The ALJ Provided Germane Reasons for Discounting the Lay Witness Statements**

An ALJ may discount lay witness statements by providing "reasons that are germane to each witness." See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). Germane reasons include inconsistencies between the lay witness statements and the medical evidence. Id.; Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (stating that inconsistencies between lay witness statements and the medical evidence "is one such reason" to validly reject statements). Here, the ALJ recounted and validly gave less weight to the wife's statements because they were inconsistent with objective medical evidence, such as the evidence

1  contained in the VA reports and Dr. Close's medical reports. (AR 17-18.) Additionally, the
2  ALJ pointed out that the wife's description of Plaintiff's "extreme" hand pain and eye sight
3  problems was not supported by his daily activities, which included working on the computer,
4  shopping and driving, and these activities suggested a higher level of functioning. (AR 17.)
5  See Bayliss, 427 F.3d at 1218 (ALJ properly rejected family testimony that was inconsistent
6  "with the record of Bayliss' activities."). Because the ALJ gave germane reasons for
7  discounting the lay witness statements, no error occurred.
8  **F. The ALJ Properly Identified Jobs Consistent with the Plaintiff's Established RFC.**
9        Because the ALJ found Plaintiff unable to perform any past relevant work, the ALJ bore
10 the burden of identifying specific jobs in the national economy consistent with the Plaintiff's
11 RFC. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). The ALJ limited Plaintiff to
12 "simple and repetitive tasks." (AR 12.) This Court concludes that the ALJ committed no error
13 when it held that Plaintiff was capable of performing jobs that are simple and repetitive, such
14 as the jobs of hospital cleaner (Dictionary of Occupational Titles ("DOT") 323.867-010),
15 counter supply worker (DOT 319.687-010) and wash room cleaner (DOT 529.687-214).
16 Contrary to Plaintiff's position, the identified positions are simple and repetitive and
17 accordingly are consistent with the Plaintiff's RFC. The identified jobs have a Specific
18 Vocation Preparation ("SVP") rating of 2 and a Reasoning Rating ranging from 1 to 2. SVP
19 is used to categorize jobs by the amount of time it takes to learn the job. SVP is also related
20 to the skill level of the position. A SVP of 2 represents unskilled work. See DOT, Appendix
21 C; Program Operations Manual System ("POMS") § DI 25001.001(B)(52). Unskilled work
22 is work "which needs little or no judgment to do simple duties that can be learned on the job
23 in a short period of time." 20 C.F.R. § 404.1568(a); see also Social Security Ruling ("SSR")
24 83-10. Additionally, the jobs identified by the vocational expert required a Reasoning Level
25 of either 1 or 2. This rating range is commensurate with Plaintiff's RFC for simple, repetitive
26 work. See Meissl v. Barnhart, 403 F.Supp.2d 981, 984 (C.D. Cal. 2005) (finding that
27 plaintiff's ability to perform simple tasks that had some element of repetitiveness to them
28 indicated a reasoning level of 2); see also Perry v. Astrue, 2009 WL 435123, at *12 (S.D. Cal.

2009) (finding that Plaintiff's contention that jobs requiring level two reasoning are inconsistent with her limitation to simple repetitive tasks is without merit).  Therefore, this Court concludes that the vocational expert's testimony, relied upon by the ALJ, was consistent with the Dictionary of Occupational Titles and Plaintiff's identified residual functional capacity.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supported the Commissioner's decision, and that the Commissioner based that decision on proper legal standards.  Accordingly, the Court  DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**

DATED: November 24, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT